IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LATWANDA EVANS                                              PLAINTIFF

VS.                        CASE NO. 05-CV-1086

AUTOZONE STORES, INC.,  a
Nevada corporation; DANIEL
HOLLINGSWORTH, an individual,
ALTON TULLIS, an individual; LARRY
HELTON, an individual; and various
JOHN DOES, employees, agents and/or
officers of Autozone                                       DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment.  (Doc. No. 30).  The

Plaintiff has filed a response to the motion.  (Doc. No. 64).  The Defendants have filed a reply to

Plaintiff's response.  (Doc. No. 72).  The Court finds the matter ripe for consideration.

## BACKGROUND

In December 1999, Plaintiff Latwanda Evans began to work for the Defendant AutoZone

as a part-time Parts Sales Manager ("PSM") in its Pine Bluff, Arkansas, store.  Thereafter, on

February 29, 2000, she left her employment with AutoZone.  On October 4, 2001, Evans was

rehired by AutoZone as a PSM in its El Dorado, Arkansas, store.  At the time of her rehire in

2001, Evans was paid $8.75 per hour.  Her duties as a PSM included opening and closing the

store, handling bank deposits, customer service, paperwork, stocking and cleaning.

During the time Evans worked at AutoZone, the company had a policy against any

discrimination in the workplace based upon race, religion, sex, age, physical or mental disability, and/or sexual orientation.  There were also procedures in place by which AutoZone employees could report discrimination to management.  Under these procedures, an employee who was subjected to discrimination was directed to discuss the discriminatory conduct with either his or her immediate supervisor, district manager, regional or divisional human resources manager, or the AutoZoner Relations Department.  Any complaints of discrimination would be directed and resolved through the AutoZoner Relations Department.  Any form of retaliation against an employee making such a complaint was prohibited.  Evans was given copies of these policies and procedures in 1999, when she was hired, and again, in 2001, when she was rehired.

After she was rehired in 2001, Evans claims that she was required to work more nights than her Caucasian or male co-workers.  She complained about this scheduling to her store manager, Aubrey Hill, and her district manager, Cass Weldon.  When she complained to Weldon, she was told to "just do her job."  Later, Evans complained to Brian Slocum, her then district manager.  Slocum told Evans he would do something about it.  Evans claims that he never did.

In October 2002, Melinda Gates, a Caucasian female, became the store manager of the El Dorado AutoZone.  At that time, Evans had been working at the El Dorado store for approximately one year.  Gates was transferred from another AutoZone store where she had been the store's manager for approximately a year and a half.[1]  Gates remained as El Dorado's store manager until December 28, 2003, when she transferred to another AutoZone store to become its store manager.  Evans claims that she told management that she was interested in becoming a

---

[1] Gates was originally promoted to the position of store manager on April 22, 2001. At that time, Evans did not work for AutoZone.

2

store manager even before positions were available. Specifically, Evans claims that she called Antonio Smith, the Regional Human Resources Manager, in Mississippi and told him that she wanted to be considered for a promotion to the manger's position in El Dorado. Smith denies that Evans ever expressed an interest in an open position to him.

Thereafter, at some point, Daniel Hollingsworth became Evans' district manager. Hollingsworth often used profanity in front of the employees. This profanity included using the word "bitch" when referring to women. Evans did not like the way Hollingsworth handled a situation when she told him that another employee was stealing from the company. Evans also claims that she once called Hollingsworth in Monticello and told him that she would be willing to interview for the position of store manager in El Dorado.[2] She claims that Hollingsworth started laughing. Evans did not file a complaint with AutoZone about Hollingsworth's conduct.

On one occasion, Evans called in sick and told Frank Jensen, the store's assistant manager, that she was having "female problems." Jensen wrote this on the work schedule. When Evans returned to work, she was teased by her co-workers about the comment. Evans called AutoZoner Relations Department and complained about the incident. After she complained, no such comments ever appeared on the schedule again. Also, once her co-workers realized that their teasing bothered her, they stopped.

On June 4, 2004, the employment of Ricky McAlphin, the store manager, and Daniel Hollingsworth, the district manager, was terminated. This made the store manager's position in El Dorado open. Evans claims that during this time she was essentially "running the store."

---

[2] In is unclear when this conversation took place. Daniel Hollingsworth's employment with AutoZone was terminated on June 2, 2004. Therefore, this conversation had to take place sometime prior to June 2004.

AutoZone disputes this contention.  It states that during this time Eric Bruce, the store manager at the AutoZone in Camden, was serving in the dual capacity of store manager in Camden and El Dorado.  Evans also claims that Eric Bruce told her that Alton Tullis, a district manager, told him that Evans was "nothing but trouble" and that Bruce needed to "help get rid of her."

In early September 2004, Larry Helton became Evans' district manager.  Evans did not tell him or Mike Harrison, the Regional Training Manager, that she was interested in the vacant store manager's position.[3]  Rather, Evans recommended Talmadge Shepherd, a Caucasian male, for employment.  Shepherd had previously worked at the El Dorado AutoZone from May 2000 until April 2004.  When Shepherd left AutoZone in April 2004, he took a management job at O'Reilly's Auto Parts.  Evans claims that when she recommended Shepherd for employment she thought he was being considered for a PSM position, not store manager.

Shepherd was interviewed for the store manager's position, along with April Colvin, an African American female, and Royce Purifoy, a Caucasian male.  AutoZone determined that Shepherd was the most qualified candidate.  He was hired as the store manager on September 27, 2004.

In July 2004, Robert O'Nale was hired as a PSM in the El Dorado store.  He was paid $10.00 per hour due to his extensive automotive knowledge and past managerial experience.  At this time, Evans was being paid $9.52 per hour.  O'Nale worked for AutoZone for approximately six weeks, from July 28, 2004 until September 17, 2004.  During this same time period, three other male PSMs, Brian Burdine, William Lewis, and Royce Purifoy, were all making less per

---

[3]  Evans claims that she had told Daniel Hollingsworth that she was interested in the position.  However, at the time the position was available in June 2004, Hollingsworth was no longer employed by AutoZone.

hour than Evans. [4]   Evans did not complain about the difference in pay rates until after O'Nale had left AutoZone in September 2004, and Talmadge Shepherd had been hired as the store's manager.  In October 2004, after her annual performance evaluation, Evans' pay rate was increased from $9.52 per hour to $9.85 per hour.

In early October, 2004, Evans informed Talmadge Shepherd that she believed that she was the victim of discrimination.  Shepherd told Larry Helton, the district manager, of the allegations.  Helton then informed Antonio Smith, the Regional Human Resources Manager.  On October 23, 2004, Smith and Helton met with Evans regarding her allegations.  At this meeting, Evans would not provide Smith with a written statement of her allegations and informed him that she had filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  After this meeting, AutoZone conducted an investigation into Evans' allegations.  Evans refused to participate in this investigation.  In its investigation, AutoZone found no evidence that Evans had been subjected to unlawful discrimination based on race, sex or retaliation or that she had been subjected to a hostile work environment.  Evans claims that after she filed her EEOC charge she did not feel like she was being treated the same at work.  However, she could not give any specifics on how she was treated differently.

On November 12, 2004, Evans resigned from her employment with AutoZone.  On or about June 27, 2005, she received a Right to Sue letter from the EEOC.  On September 20, 2005, Evans filed this action against AutoZone, Daniel Hollingsworth, Alton Tullis and Larry Helton.  In the suit, Evans alleges that the Defendants violated Title VII of the Civil Rights Act of 1964,

---

[4] Evans implies that Royce Purifoy was earning more than she was during this time.  However, the evidence before the Court indicates that Evans was earning $9.52 per hour while Purifoy was earning $9.50 per hour.

42 U.S.C. §§ 2000e *et seq*, ("Title VII"), by discriminating against her on the basis of her race

and gender in the areas of promotion, disparate treatment, hostile work environment and

retaliation.   Evans also asserts these claims under 42 U.S.C. § 1981, the Equal Pay Act ("EPA"),

29 U.S.C. §§201-09 and 206(d), and the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann.

§§ 16-123-106, 107 and 108.  Evans further alleges claims for conspiracy under 42 U.S.C. §

1985, along with state law claims for constructive discharge and intentional infliction of

emotional distress.  The matter is now before the Court on the Defendants' Motion for Summary

Judgment.

<u>STANDARD OF REVIEW</u>

The standard of review for summary judgment is well established.  The Federal Rules

of Civil Procedure provide that when a party moves for summary judgment;

> The judgment sought shall be rendered forthwith if the pleadings, dispositions,
> answers to interrogatories, and admissions on file, together with affidavits, if any,
> show that there is no genuine issue as to any material fact and that the moving party
> is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995).  The Supreme

Court has issued the following guidelines for trial courts to determine whether this standard

has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a
> need for trial–whether, in other words, there are genuine factual issues that properly
> can be resolved only by a finder of fact because they may reasonably be resolved
> in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986).  *See also Agristor Leasing v.*

*Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus.*

*Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986).  A fact is material only

6

when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

<u>DISCUSSION</u>

Evans claims that AutoZone and the individual Defendants Daniel Hollingsworth, Alton Tullis and Larry Helton discriminated against her on the basis of her race and her gender in violation of Title VII, 42 U.S.C. §1981, the EPA and the ACRA.

In employment discrimination cases under Title VII, the Supreme Court has long applied the familiar three-step burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 41 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[5] Under *McDonnell*

---

[5] Claims under § 1981 and the ACRA are analyzed using the same burden-shifting framework as Title VII claims. *See Putman v. Unity Health Sys.,* 348 F.3d 732, 735 n.2 (8th Cir. 2003)(applying *McDonnell Douglas* to § 1981 claim); *Crone v. United Parcel Serv., Inc.,* 302 F.3d 942, 945 (8th Cir. 2002)(applying *McDonnell Douglas* to ACRA claim). Therefore, the Court's analysis of Evan's Title VII claims equally applies to her

*Douglas,* the plaintiff must first establish a prima facie case of discrimination.  If the plaintiff is able to do this, the burden of production then shifts to the defendant to assert a legitimate non-discriminatory reason for the alleged discrimination.  If the defendant sets forth such a reason, the burden then shifts back to the plaintiff to establish that the asserted reason was merely a pretext for discrimination.

In discrimination cases relating solely to unequal pay for equal work, the claims are governed by the standards of the Equal Pay Act.  *Taylor v. White,* 321 F.3d 710, 715 (8th Cir. 2003)(*citing Buettner v. ArchCoal Sales Co., Inc.,* 216 F.3d 707, 718-19 (8th Cir. 2000)). Under the EPA, a plaintiff must establish a prima facie case by "show[ing] that the defendant paid male workers more than she was paid for equal work in jobs that required equal skill, effort, and responsibility and work performed under similar conditions."  *Buettner,* 216 F.3d at 719.  If the plaintiff makes this showing, the burden shifts to the defendant to prove one of the affirmative defenses set forth in the EPA. *See* 29 U.S.C. § 206(d)(1).[6]  This differs from Title VII's  analytical framework set forth in *McDonnell Douglas*.  Under the EPA, a defendant cannot escape liability merely by articulating a legitimate non-discriminatory reason for the

_____

claims under § 1981 and the ACRA.

[6] 29 U.S.C. §206(d)(1) states:  No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of  production; or (iv) a differential based on any other factor other than sex . . . .

employment action.  Rather, the defendant must prove that the pay differential is based upon a factor other than sex.

### I.  Claims pursuant to Title VII, 42 U.S.C. § 1981 and the ACRA

Under Title VII, an employer may not "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race ... [or] sex."  42 U.S.C. § 2000e-2(a).  Here, Evans claims that AutoZone and the individual Defendants discriminated against her in regard to promotions, disparate treatment and hostile work environment.  She also claims that she was retaliated against for filing a complaint with the EEOC.

### Evans' Claims against the Individual Defendants

Evans alleges that the individual Defendants Daniel Hollingsworth, Alton Tullis and Larry Helton discriminated against her on the basis of her race and gender in violation of Title VII, 42 U.S.C. § 1981 and the ACRA.  She seeks to find these Defendants individually liable under these Acts.  In response, the Defendants contend that neither Title VII nor the ACRA provides a basis for imposing individual liability upon these Defendants.  Thus, they claim that these claims against them must fail.  The Court agrees.

These individual Defendants are not "employers" under either Title VII or the ACRA. *See Morrow v. City of Jacksonville, Ark.,* 941 F.Supp 816 (E.D.Ark. 1996)(*citing Lenhardt v. Basic Institute of Technology, Inc.,* 55 F.3d 377, 381 (8th Cir. 1995)).  Therefore, they may not be held individually liable as such.   Accordingly, Evans' Title VII and ACRA claims against individual Defendants Daniel Hollingsworth, Alton Tullis and Larry Helton must fail as a matter of law.

9

**Evans' Claims against AutoZone**

Evan alleges that AutoZone  discriminated against her on the basis of her race and gender in regard to promotions, disparate treatment and hostile work environment, all in violation of Title VII, 42 U.S.C. § 1981 and the ACRA.  She also claims that AutoZone retaliated against her for filing a complaint with the EEOC.  The Court will address each of these claims separately.

*Evans' Failure to Promote Claim*

Evans contends that AutoZone discriminated against her in violation of Title VII when AutoZone failed to promote her to the position of store manager in 2002 and 2004.[7]  In order to establish a prima facie case of failure to promote, Evans must show 1) that she is a member of a protected class; 2) that she was qualified and applied for a promotion to an available position; 3) she was rejected; and 4) a similarly situated employee, not part of the protected class, was promoted instead.  *Shannon v. Ford Motor Co.,* 72 F.3d 678, 682 (8th Cir. 1996) (citations omitted).

AutoZone claims that Evans can not satisfy the second element of her prima facie case–that she was qualified and applied for a promotion to an available position.  AutoZone does not dispute that Evans was qualified for the job of store manager.  However, it does dispute that, in 2002 and 2004, she ever applied for an available position.  The Court agrees.

---

[7] Originally, Evans claimed that she was discriminated against in 2004 when Talmadge Shepherd was hired as the store's manager.  However, in her response, Evans seems to imply that she was also discriminated against in 2002 when Melinda Gates transferred into El Dorado as store manager.

Evans claims that she told both Antonio Smith and Daniel Hollingsworth that she was interested in becoming a store manager.  There is no indication when these conversations took place.  However, it is apparent that the store manager's position was not available at the time.  When the position was available, Evans never told her district managers, Brian Slocum or Larry Helton,[8] of her desire to be promoted to store manager.  Thus, it does not appear to this Court that Evans ever applied for a promotion to an available position in either 2002 or 2004.  Evans has failed to satisfy the second element of her prima facie case, and her claim must fail.

Even if Evans could establish her prima facie case for failure to promote in these instances, the result would be the same.  AutoZone has produced a legitimate non-discriminatory reason for the alleged discrimination.  It states that both Gates and Shepherd had been  managers at other stores [9] and were the best qualified candidates.  In response, Evans claims in some unidentified manner she was "more qualified" to be manager than Gates or Shepherd.  However, this is not enough to establish pretext on the part of AutoZone.  *See Davis v. KARK-TV, Inc.,* 421 F.3d 699 (8th Cir. 2005).  Accordingly, Evans' failure to promote claims must fail as a matter of law.[10]

### Evans' Hostile Work Environment Claim

Evans contends that she was subjected to a hostile work environment based upon her

---

[8] Brian Slocum was Evans' district manager from August 2002 until February 2003. Larry Helton was Evans' district manager starting in September 2004.

[9] Gates had been a manager at another AutoZone and Shepherd had been a manager at O'Reilly's Auto Parts.

[10] In light of the above analysis and ruling in regard to Evans' Title VII failure to promote claims, the Court finds that her claims for failure to promote under 42 U.S.C. § 1981 and the ACRA must also fail.

race and her gender.  In order to establish a prima facie case of hostile work environment, Evans must show that 1) she belongs to a protected class; 2) that she was subjected to unwelcome, severe or pervasive race-based or gender-based harassment; 3) that the harassment was because of her membership in the protected group; 4) that the harassment affected a term, condition, or privilege of her employment; and 5) that AutoZone knew or should have know about the harassment but failed to take prompt and effective remedial action.  *Diaz v. Swift-Eckrich, Inc.,* 318 F.3d 796, 800 (8th Cir. 2003)(*citing Carter v. Chrysler Corp.,* 173 F.3d 693, 700 (8th Cir. 1999)).  AutoZone contends that Evans can not show that she was subjected to unwelcome, severe or pervasive harassment that affected a term, condition, or privilege of her employment.

First, Evans claims that she was subjected to a racially hostile work environment.  In support of this contention, Evans points to one racial comment allegedly made by Daniel Hollingsworth, her district manager.  Evans claims that Hollingsworth once referred to her as a "black bitch" in front of another PSM.  Evans did not hear Hollingsworth make this comment.  Rather, she heard about it second hand.

In order for this unwelcome harassment to be actionable it must be severe or pervasive enough to create an objectively hostile or abusive environment–an environment that a reasonable person would find hostile or abusive.  *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).  When such harassment is found to be severe or pervasive it is deemed to affect a term, condition, or privilege of employment.  *Faragher v. City of Boca Raton,* 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).  In determining whether sufficient evidence of a hostile work environment claim has been

presented, the courts consider all of the attendant circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Ducan v. Gen. Motors Corp.,* 300 F.3d 928, 934 (8th Cir. 2002). Therefore, to satisfy the "high threshold of actionable harm," Evans must show that her workplace was permeated with discriminatory intimidation, ridicule, and insult. *Ducan,* 300 F.3d at 934 (*quoting Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "[M]ere utterance of an . . . epithet which engenders offensive feelings in a[n] employee . . . does not sufficiently affect the conditions of employment" to implicate Title VII. *Harris,* 510 U.S. at 21, 114 S.Ct. 367 (internal quotation marks and citations omitted).

In reviewing the racially hostile conduct of which Evans complains, the Court finds that although Hollingsworth's remark is offensive, Evans has not presented sufficient evidence to show that the workplace was "permeated with discriminatory intimidation, ridicule and insult." This one comment is not severe or pervasive enough to create an objectively hostile or abusive work environment–one that a reasonable person would find hostile or abusive. *Woodland v. Joseph T. Ryerson & Sons, Inc.,* 302 F.3d 839 (8th Cir. 2002). The conduct which Evans cites falls short of satisfying the second and fourth elements necessary for a prima facie case of racially hostile work environment. Therefore, this claim must fail.

Evans also claims that she was subjected to a hostile work environment because of her gender. In order to maintain such a claim, Evans must show that she was subjected to gender or sexual harassment in the workplace which interfered with her work performance or created an intimidating, hostile or offensive work environment. *Rheineck v. Hutchinson Tech., Inc.,*

13

261 F.3d 751, 756 (8th Cir. 2001).

In this case, Evans points to thee incidents.  The first involves Daniel Hollingsworth using profanity, including the word "bitch" when referring to women, the second involves Hollingsworth laughing when Evans told him she was interested in becoming a store manger and the third involves  Frank Jensen writing on the schedule that Evans was out sick with "female problems."

There is no evidence on how often Hollingsworth used the word "bitch " in front of Evans.  He was Evans' district manager and did not work in the El Dorado store on a daily basis.  It is clear, however, that the comment on the schedule about "female problems" and Hollingsworth's laughing at Evans' desire to become a store manager only happened once.  Although, the Court finds Hollingsworth's language and conduct inappropriate and the comment on the schedule offensive, they did not rise to the level of creating an intimidating, hostile or offensive work environment or interfere with Evans' work performance.  Therefore, Evans' claim of a gender-based hostile work environment must also fail as a matter of law.[11]

### *Evans' Disparate Treatment Claim*

Evans contends that she was subjected to disparate treatment based upon her race and her gender in violation of Title VII.  In order to establish a prima facie case of disparate treatment, Evans must show that 1) she is a member of a protected class; 2) she was meeting her employer's legitimate job expectations; 3) she was subjected to an adverse employment action; and 4) similarly situated employees outside the protected class were treated differently.

---

[11] In light of the above analysis and ruling in regard to Evans' Title VII hostile work environment claims, the Court finds that her claims for hostile work environment under 42 U.S.C. § 1981 and the ACRA must also fail.

*Philip v. Ford Motor Co.,* 413 F.3d 766, 768 (8th Cir. 2005).

AutoZone contends that Evans can not establish her prima facie case because she was not subjected to an adverse employment action.  Evans claims that AutoZone discriminated against her when she was required to work more nights than Caucasian or male PSMs.

In order for conduct to constitute an adverse employment action there must be a tangible change in working conditions that produces a material employment disadvantage. Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, but minor changes in working condition that merely inconvenience an employee or alter an employee's work responsibilities do not.  *Sallis v. University of Minn.,* 408 F.3d 470, 476 (8th Cir. 2005).  Here, Evans had to work nights.  Having such a work schedule did not impact her title, salary, benefits or other material aspect of her employment.  Thus, Evans did not suffer an adverse employment action when she had to work nights.  *See Diggs v. City of Osceola,* 2007 WL 846527, *3 (E.D.Ark. March 19, 2007).  Evans can not establish the third element of her prima facie case and, thus, her claim of disparate treatment must fail.[12]

### Evans' Retaliation Claim

Evans also alleges that AutoZone retaliated against her in violation of Title VII.  A claim of retaliation pursuant to Title VII is not based upon race or gender discrimination, but instead upon "an employer's actions taken to punish an employee who makes a claim of discrimination."  *Haas v. Kelly Services, Inc.,* 409 F.3d 1030, 1037 (8th Cir. 2005).  To

---

[12] In light of the above analysis and ruling in regard to Evans' Title  VII disparate treatment claim, the Court finds that her claim for disparate treatment under 42 U.S.C. § 1981 and the ACRA must also fail.

establish a prima facie case of retaliation, Evans must show 1) that she participated in a protected activity; 2) that AutoZone took adverse employment action against her; and 3) that there is a causal connection between the protected activity and the adverse employment action. *Hunt v. Nebraska Public Power Dist.,* 282 F.3d 1021, 1028 (8th Cir. 2002).

In October 2004, Evans filed a charge of discrimination with the EEOC.  Therefore, it is clear that she participated in a protected activity under the Act.  AutoZone claims that she can not establish the second element of her retaliation claim–that AutoZone took an adverse employment action against her.  Evans claims that after she filed her complaint she did not feel like she was being treated the same at work.  However, she could not give any specifics on how she was treated differently.

In order for conduct to constitute an adverse employment action there must be a tangible change in working conditions that produces a material employment disadvantage. Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard.  *Sallis,* 408 F.3d at 476.  On November 12, 2004, approximately six weeks after filing her EEOC charge, Evans resigned from her employment at AutoZone.  She claims that she was constructively discharged and that this constitutes an adverse employment action.

"A constructive discharge occurs when an employee resigns after his employer has created an intolerable working environment in a deliberate attempt to compel such a resignation."  *Davis v. KARK-TV, Inc.,* 421 F.3d 699, 706 (8th Cir. 2005)(*quoting Tatum v. City of Berkeley,* 408 F.3d 543, 551 (8th Cir. 2005)).  Here, there is no evidence that Evans was subjected to an adverse employment action after she filed her EEOC charge.  In fact, the

16

evidence shows that after she filed her charge, Evans received a positive performance review and a pay increase.  There is also no evidence that Evans' working environment was intolerable or that AutoZone acted with the intention of forcing Evans to resign.  As soon as AutoZone learned of Evans' discrimination claims, Antonio Smith and Larry Helton met with her.  At this meeting, Evans refused to provide AutoZone with a written statement regarding her allegations.  Thereafter, AutoZone conducted an investigation in which Evans refused to participate.  Rather than force her out, AutoZone's actions show a desire to try and find a solution to Evans' concerns.  "An employee who quits without giving her employer a reasonable chance to work out a problem has not been constructively discharged.  *Tidwell v. Meyer's Bakeries, Inc.,* 93 F.3d 490 494 (8th Cir. 1996).  Evans was not constructively discharged from her employment with AutoZone.  Therefore, she did not suffer an adverse employment action at its hands.  Evans can not satisfy the second element of her prima facie case of retaliation and her claim must fail as a matter of law.[13]  [14]

### II. Claims pursuant to the Equal Pay Act

### Evans' claims against the Individual Defendants

Evans alleges that the individual Defendants Daniel Hollingsworth, Alton Tullis and Larry Helton discriminated against her on the basis of her race and gender in violation of the EPA.  She seeks to find them individually liable under the Act.  In response, the Defendants

---

[13] In light of the above analysis and ruling in regard to Evans' retaliation claim, the Court finds that her claim for retaliation under the ACRA must fail.

[14] In light of the above analysis and ruling in regard to Evans' contention that she was constructively discharged in retaliation for filing her EEOC charge, the Court finds that Evans' separate claim of constructive discharge under state law must also fail as a matter of law.

contend that the EPA does not provide a basis for imposing individual liability upon these Defendants.  Thus, they contend that this claim against them based upon unequal pay must fail as a matter of law.

Under the EPA, a covered employer is prohibited from discriminating against employees "on the basis of sex by paying wages to employees ...  at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  29 U.S.C. § 206(d).  An "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . . . "  29 U.S.C. § 203(d).

The Eighth Circuit has not addressed the issue of when an individual may be considered an employer under the EPA.  Regardless of this fact, Evans' claim against these individual Defendants can not survive because she has failed to allege any facts supporting individual liability under the EPA.  Therefore, Evans' EPA claims against individual Defendants Daniel Hollingsworth, Alton Tullis and Larry Helton must fail.  *See Taylor v. St. Louis County Bd. of Election Com'rs,* 2008 WL 250367 *4 (E.D.Mo. January 29, 2008).

### Evans' Claims against AutoZone

Evans claims that AutoZone discriminated against her in violation of the EPA and Title VII when Robert O'Nale was hired as a PSM at a higher hourly rate than she was making.  Because this allegation relates solely to unequal pay for equal work, Evans' claim is governed by the standards of the Equal Pay Act.  *Taylor v. White,* 321 F.3d 710, 715 (8th Cir. 2003)(*citing Buettner v. ArchCoal Sales Co., Inc.,* 216 F.3d 707, 718-19 (8th Cir. 2000)).

18

As stated previously, under the EPA, a plaintiff must establish a prima facie case by "show[ing] that the defendant paid male workers more than she was paid for equal work in jobs that required equal skill, effort, and responsibility and work performed under similar conditions." *Buettner,* 216 F.3d at 719. If the plaintiff makes this showing, the burden shifts to the defendant to prove one of the affirmative defenses set forth in the EPA.

Here, AutoZone argues that Evans can not establish her prima facie case by showing that AutoZone paid male workers more than it paid her. In support of its argument, AutoZone points to the fact that out of the four male PSMs working in the El Dorado store, Evans made more than three of them. Given this fact, Evans can not establish that AutoZone paid its male employees workers more than it paid her. *See Grabovac v. Allstate Insurance Company,* 426 F.3d 951 (8th Cir. 2005).

Even if Evans could establish her prima facie case for unequal pay, the result would be the same. AutoZone has established that the reason Robert O'Nale was hired at a higher hourly rate than Evans was making was that he had extensive automotive knowledge and substantial management experience. It has proven the last statutory defense set forth in the EPA–that the pay discrepancy in this situation was "based on any other factor other than sex . . . .". 29 U.S.C. §206(d)(1) (iv). Thus, Evans' unequal pay claim, under both the EPA and Title VII, must fail as a matter of law.

### III.  Claims for Conspiracy

Evans alleges that the Defendants conspired to violate her civil and constitutional rights in violation of 42 U.S.C. § 1985 and state law. However, she has admitted in her deposition that she has no evidence to support such a claim. Therefore, these claims must fail

19

as a matter of law.

### IV.  Claim for Constructive Discharge

Evans claims that AutoZone constructively discharged her in violation of state law.
However, as previously noted in n. 14,  in light of the Court's analysis and ruling in regard to
Evans' contention that she was constructively discharged in retaliation for filing her EEOC
charge, the Court finds that Evans was not constructively discharged.  Thus, her separate claim
of constructive discharge under state law must fail as a matter of law.

### V.  Claim for Intentional Infliction of Emotional Distress

Evans claims that during her employment with AutoZone she was subjected to
treatment that amounted to an intentional infliction of emotional distress.  Under Arkansas
law, a claim for intentional infliction of emotional distress requires conduct to be "so
outrageous in character and so extreme in degree as to go beyond all possible bounds of
decency, and to be regarded as atrocious and utterly intolerable in a civilized society."
*Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 743 S.W.2d 380 (1988).  In this case, Evans
claims that 1) she was not promoted to the position of store manager; 2) she was required to
work more nights than her Caucasian male co-workers; 3) she was paid less than one of her
four Caucasian or male co-workers; 4) an assistant manager once wrote on the work schedule
that she was out sick with "female problems"; 5) a district manager used profanity in front of
employees, including the word "bitch"; 6) a district manager laughed when she told him she
wanted to become a store manager; 7) she did not like the way a district manager handled a
situation when she reported another employee stealing; and 8) a district manager told a store
manager that she was nothing but trouble and he needed to help get rid of her.  The Court does

not find this conduct so outrageous or extreme as to go beyond all possible bounds of decency. Thus, it does not rise to the level necessary to sustain a claim for intentional infliction of emotional distress under state law.  Therefore, this claim must fail as a matter of law.


## **CONCLUSION**

For the reasons stated herein and above,  the Court finds that the Defendants' Motion for Summary Judgment should be and hereby is **granted**.  A judgment of even date, consistent with this Opinion, will be issued.

IT IS SO ORDERED, this 13th day of March, 2008.


    /s/Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge